IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRANSDEV SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | 1:25-cv-888 (LMB/WEF) |
| AMALGAMATED TRANSIT UNION, LOCAL ) | |
| 689, AFL-CIO, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This civil action arises from plaintiff Transdev Services, Inc.'s ("Transdev") decision to terminate the employment of Mark Wilson ("Wilson") after Wilson struck a pedestrian in a crosswalk while operating one of Transdev's buses. Defendant Amalgamated Transit Union, Local 689, AFL-CIO ("the Union") grieved the termination of Wilson's employment, and pursuant to the applicable Collective Bargaining Agreement ("CBA"), the parties submitted the grievance to arbitration. Although the arbitrator found that Transdev had just cause to discipline Wilson for committing a "serious infraction," he found that because Wilson's conduct did not constitute gross negligence or recklessness, the termination was unjustified. On this basis, the arbitrator reduced Wilson's discharge to a 60-day suspension and ordered that he be returned to his former position with lost benefits, seniority, and back pay, less interim earnings, for the period beyond the 60-day suspension until his reinstatement.

Transdev filed this civil action seeking an order vacating the arbitration award. The parties have filed Cross-Motions for Summary Judgment, which have been fully briefed, and the Court heard oral argument on February 6, 2026. For the reasons stated in open court, as supplemented by this Memorandum Opinion, Transdev's Motion for Summary Judgment has

been granted, the Union's Motion for Summary Judgment has been denied, and the arbitration award has been vacated.

I.

The following facts are undisputed. In 2019, Transdev, a private operator of transportation services, entered into a contract with the Fairfax County Department of Transportation to operate the Fairfax Connector Service, a bus system in Fairfax County, Virginia. Joint Stipulation of Uncontested Facts, Dkt. No. 25, at ¶ 2 (hereinafter, "Joint Stip."); Opinion and Award, Dkt. No. 1-2, at 2 (hereinafter, "Arb. Award"). The Union is the exclusive collective bargaining representative for the Fairfax Connector Service's bus operators. Joint Stip. ¶ 2.

Transdev and the Union entered into the CBA, which is effective from December 1, 2023 to November 30, 2026. Id. ¶ 3. As to employee discipline, the CBA provides that Transdev maintains the right to "[m]anage the operation and direct the working forces, including the right to hire and to suspend, discipline, or discharge employees for cause." CBA, Dkt. No. 1-1, art. 3, § 3.1(a) (hereinafter, "CBA"). Article 13 expands upon when, and how, Transdev may discipline its employees.[1] Section 13.1 provides that "[n]o employee will be disciplined without just cause and without investigation by [Transdev]." Section 13.3 outlines Transdev's policies regarding progressive discipline:

> B. Normal disciplinary measures which the Company may use are:
> 1. Oral Warning – This is a discussion between an Employee and the Company regarding an infraction, policies, or work rules.
> 2. Written Warning – This is a formal written notice to the Employee that he/she has violated the Company's policies or work rules. This warning is usually accompanied by a discussion and counseling session to discover the cause for the infraction and to emphasize the importance of compliance with the Company's policies and work rules.

---

[1] The CBA contains 44 articles, and each article contains several sections.

2

> 3. Suspension – A suspension is an involuntary absence from work for which the Employee is not paid. Suspensions will be progressive in nature.
> 4. Termination – Termination is an involuntary separation of the Employee. It is the last step in the progressive discipline program.
>
> C. Serious infractions may be exceptions to progressive discipline.

The CBA does not define either "just cause" or "serious infractions."

As to resolving disputes, Article 7 outlines a grievance procedure and provides for arbitration if a grievance is not resolved through the grievance process. Of significance to resolving the parties' dispute is Section 7.4, which limits the authority of an arbitrator "to the interpretation, application and compliance with the provisions of this Agreement." Additionally, Section 7.5 states that the arbitrator "shall have no authority to add to, detract from, alter, or otherwise amend in any way any provision of this Agreement."

The parties do not dispute that, upon hiring and throughout a bus operator's employment, Transdev provides training on a variety of safe driving practices involving potentially hazardous conditions, including evening driving and driving in the rain. Joint Stip. ¶ 7. This training includes the "rock and roll" method of ensuring that a bus operator's peripheral view is clear, which requires a bus operator "to look in six directions in order to ensure that the roadway is clear and free of obstructions, and the blind spot is clear before a bus operator proceeds into an intersection." Id. ¶ 8. Transdev also instructs operators to pause for three to four seconds before entering an intersection to make sure that it is clear of any pedestrians. Transcript of Arbitration Hearing, Dec. 20, 2024, Dkt. No. 22-2, at 68:10–19 (hereinafter, "Arb. Tr.").

In 2019, Transdev employed Wilson as a bus operator.[2] Joint Stip. ¶ 10. When Wilson was hired, he learned about the "rock and roll" safety practice and other methods to ensure the

---

[2] Although Wilson began working for Transdev's predecessor in 2016, Transdev did not have access to those personnel records. Arb. Award at 2.

3

safety of pedestrians. Arb. Tr. at 43:1–17; Pl.'s Ex. 7. Wilson also periodically took several refresher training courses, including courses on yielding to pedestrians, checking blind spots, the "rock and roll" method, and pausing for three to four seconds before turning into an intersection. See Pl.'s Exs. 8–9.

On November 21, 2023 at approximately 5:45 PM,[3] Wilson was operating a bus on Route 402 southbound when he struck a pedestrian who was in the crosswalk at an intersection while he was turning his bus left from Columbia Pike to Backlick Road. Joint Stip. ¶ 11. When Wilson first approached the intersection, he entered the left-turn lane and stopped the bus because the traffic light was red. Pl.'s Ex. 16D; Arb. Tr. at 68:20–24. When the signal turned green, Wilson immediately began to turn left without waiting three to four seconds and without using the rock and roll safety technique. Pl.'s Ex. 16D; Arb. Tr. at 69:1–8. Additionally, Wilson testified at the arbitration hearing that his attention was focused on the next light a block down the road because he was concerned that his bus would not fit through the next intersection without hitting the curb. Arb. Tr. at 137:15–19. As he was turning, a pedestrian was in the crosswalk on Backlick Road with the crossing indicator lighted. Joint Stip. ¶ 12; Pl.'s Ex. 16D. Midway through his turn, Wilson heard screams from outside the bus, causing him to stop and investigate what had happened. Arb. Tr. at 138:20–22. When he exited the bus, he found a pedestrian with her legs trapped under the vehicle. Id. at 138:21–24. The injured pedestrian was subsequently transported to the hospital and treated for injuries to her legs. Joint Stip. ¶¶ 13–14.

Because a pedestrian was injured, Transdev labeled the accident a "critical incident" and conducted a thorough investigation. Arb. Tr. at 52:8–13. During the investigation, Transdev determined that Wilson was not under the influence of drugs or alcohol at the time of the

---

[3] The videos of the accident show that it was dark and rainy on that evening. Pl.'s Ex. 16D.

4

incident and there were no mechanical issues with the bus that may have contributed to the collision. Id. at 72:1–14. Transdev also reviewed video footage of the accident and determined that Wilson failed to wait three to four seconds before turning and failed to use the rock and roll method, causing him to strike the pedestrian in the crosswalk. Id. at 69:1–8. Based on that information, Transdev concluded that the accident was preventable. Joint Stip. ¶ 17. Wilson did not appeal the preventability determination to the Accident Review Board, which he was permitted to do. Id. ¶ 18.

After determining that the incident was preventable, Transdev concluded that Wilson had committed a "serious infraction." Arb. Tr. 121:20. Transdev management testified at the arbitration hearing that the company considered a variety of factors in coming to that conclusion:

> After looking at all the mitigating circumstances, which I don't take lightly, you know, I took into account his employee record, I took into account the fact that we made sure that the bus was operating as manufacturer recommendations in terms of our preventative maintenance, all of those things go into account to make that determination. When I make a determination to separate an employee, there are multiple factors I look at, and preventability of that accident was absolutely one of those major things when we looked at the condition of the night and the fact that the pedestrian was in the crosswalk and had the right of way.

Id. at 121:3–17. The Transdev representative further testified that, after considering all potential mitigating factors, the company decided that termination of Wilson's employment was appropriate because Wilson clearly struck a "pedestrian [who] was in the crosswalk" and who "had the right of way." Id. at 122:6–24; Pl.'s Ex. 15. Accordingly, on December 8, 2023, Transdev terminated Wilson's employment. Joint Stip. ¶ 20.

The Union grieved Wilson's termination, and because the grievance was not resolved through the grievance procedure outlined in the CBA, it was submitted to arbitration. Id. ¶¶ 21–22. The arbitration centered around a single question: "Did the Employer have just cause to

discharge the Grievant and, if not, what shall be the remedy?"[4] Arb. Award at 2. After a one-day hearing, on April 23, 2025, the arbitrator issued an award that "reduced Wilson's discharge to a sixty-day suspension and ordered him to be returned to his former position with lost benefits, seniority, and back pay, less interim earnings, for the period beyond the sixty-day suspension until his reinstatement." Joint Stip. ¶ 25.

In support of this conclusion, the arbitrator first found that discipline was warranted because "it is more likely than not that [Wilson] did not follow safety guidelines and that his bus struck a passenger." Arb. Award at 10. Next, the arbitrator concluded that, although discipline was warranted, termination of Wilson's employment was too severe because the accident, "although preventable," was not "the result of any aggravating circumstances, such as wanton disregard of established practices or gross negligence." Id. at 10–11. The arbitrator went on to explain:

> While the Grievant did not adhere to what apparently were unwritten safety practices, the Arbitrator is convinced that he was not reckless or wanton in his disregard of those policies but was simply negligent in his actions. The Grievant did make reasonable efforts to make sure that the crosswalk was clear. He was not reckless or grossly negligent. . . .
>
> Based on all the circumstances, the Arbitrator determines that there was just cause for discipline. The Grievant was negligent in failing to adhere to safety policies. Although the Agreement requires progressive discipline as an element of just cause, it does provide that serious infractions may be exceptions to progressive discipline. It does not, however, eliminate the concept of just cause in cases of serious infractions. The Agreement does not <u>require</u> discharge for every serious infraction. The Arbitrator must still evaluate the totality of the circumstances. This is not a first minor offense warranting minimal discipline. Because of the seriousness of the consequences of the Grievant's actions, the infraction must be regarded as serious. Quite simply, buses should not strike pedestrians. Yet, because the Grievant was not reckless or grossly negligent, discipline less serious than discharge is appropriate under the Agreement's just cause provision.

---

[4] Although the Union grieved Wilson's termination, the arbitration award refers to Wilson as "the Grievant."

Id. at 11–12 (emphasis in original). Based on this reasoning, the arbitrator concluded that a 60-day suspension—rather than termination—was appropriate. Id. at 13.

On May 23, 2025, Transdev filed its Complaint against the Union. [Dkt. No. 1]. The Complaint alleges "that the Opinion and Award: (a) does not draw its essence from the CBA; (b) is contrary to and disregards the express and plain, unambiguous meaning of the CBA; (c) adds to, subtracts from, supplements and/or modifies the express terms of the CBA; (d) is arbitrary and capricious insofar as the Arbitrator exceeded his power to interpret and apply the CBA by imposing on the parties his own brand of industrial justice; (e) is outside the scope of the Arbitrator's authority; and (f) fails to conform, or confine itself, to matters within the scope of the arbitrator's jurisdiction." Compl. ¶ 31. The remedies sought are an order vacating the arbitration award and an award of attorney's fees and costs to plaintiff.

II.

A federal court's authority to review an arbitration award is "substantially circumscribed."[5] Patten v. Signator Ins. Agency, Inc., 441 F.3d 230, 234 (4th Cir. 2006); see Advantage Veterans Servs. of Walterboro, LLC v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l, Loc. 7898, 70 F.4th 751, 755 (4th Cir. 2023) ("A court's review of a labor-arbitration pursuant to a collective bargaining agreement is very limited."). In fact, "the scope of judicial review for an arbitrator's decision is among the narrowest known at law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all." Three S Del., Inc. v. DataQuick Info. Sys., Inc., 492 F.3d

---

[5] Although the Union expends much effort discussing the proper standard of review for arbitration awards, the Fourth Circuit has clarified when a federal court may vacate an arbitration award, and the parties' disagreements as to the semantics of the standard of review are immaterial.

520, 527 (4th Cir. 2007) (citation omitted). Because an arbitration award is final and binding "for matters within the scope of an arbitration clause," a federal court "does not 'sit to hear claims of factual or legal error by an arbitrator,' and must defer to the arbitrator 'as long as the arbitrator is even arguably construing or applying the contract.'" Champion Int'l Corp. v. United Paperworkers Int'l Union, ALF-CIO, 168 F.3d 725, 728 (4th Cir. 1999) (quoting United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987)). In other words, "courts . . . have no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim." United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568 (1960).

Nonetheless, a federal court "retains the obligation to insure that the arbitrator has acted within the contractually-drawn boundaries of his authority." Champion Int'l Corp., 169 F.3d at 728. To that end, the Fourth Circuit has recognized several permissible grounds on which a federal court may vacate an arbitration award.[6] In particular, a court "must vacate an arbitrator's award if it . . . fails to draw its essence from the collective bargaining agreement." Id. at 729. An arbitration award fails to draw its essence from the agreement when the award "reflects merely the arbitrator's personal notions of right and wrong," id., or "when an arbitrator has disregarded or modified unambiguous contract provisions," Choice Hotels Int'l, Inc. v. SM Property Mgmt., LLC, 519 F.3d 200, 207 (4th Cir. 2008) (citation omitted). Put differently, "a court reviewing an arbitration award must satisfy itself that the award is grounded in the collective bargaining agreement rather than in the arbitrator's 'own brand of industrial justice.'"

---

[6] The Union faults Transdev for not relying upon the grounds for vacating an arbitration award outlined in 9 U.S.C. § 10, [Dkt. No. 31-1] at 11; however, the Fourth Circuit has made clear that additional grounds exist at common law for vacating an arbitration award, UBS Fin. Servs., Inc. v. Padussis, 842 F.3d 336, 339 (4th Cir. 2016).

8

Champion Int'l, 168 F.3d at 729 (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)). To test the validity of an arbitration award, the court should ask "whether the award ignored the plain language of the CBA." Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996).

Additionally, "an arbitration award is unenforceable if it exceeds the scope" of the arbitrator's authority. Textile Workers Union of Am., AFL-CIO, Loc. Union No. 1386 v. Am. Thread Co., 291 F.2d 894, 897 (4th Cir. 1961). In other words, an award should be vacated if the "arbitrator acted outside the scope of his contractually delegated authority." E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17, 531 U.S. 57, 62 (2000); see 9 U.S.C. § 10(a)(4) (permitting a court to vacate an arbitration award "where the arbitrators exceeded their powers").

### III.

As Transdev persuasively argues, the arbitration award must be vacated because it fails to draw its essence from the CBA by modifying its unambiguous terms. See Choice Hotels Int'l, Inc., 519 F.3d at 207. In particular, the arbitrator modified Section 13.3(C) by concluding that termination was too severe a penalty for a "serious infraction" because Wilson was neither reckless nor grossly negligent when he committed that infraction. There is nothing in Section 13.3(C), or elsewhere in the CBA, that requires a finding of gross negligence or recklessness in order to terminate an employee. Rather, all that Section 13.3(C) provides is that to bypass progressive discipline, Transdev must conclude only that the infraction was "serious," not that the employee was reckless or acted with gross negligence or wanton disregard for Transdev's safety policies. "Once the Arbitrator found that a serious infraction of safety standards occurred and that discipline was warranted," he was not permitted "to rewrite the parties' agreement and add terms imposing and requiring the higher standards of 'grossly negligent,' 'reckless,' or 'in wanton disregard' of safety standards." [Dkt. No. 33] at 7–8.

9

The arbitrator also modified Section 13.1, which prohibits Transdev from disciplining an employee without "just cause." As Transdev correctly points out, there is "nothing in the contract which requires findings of recklessness, gross negligence or wanton disregard of Transdev's rules as necessary to find just cause for termination." [Dkt. No. 22] at 19. In determining that Transdev lacked just cause to terminate Wilsons's employment because his actions were merely negligent (rather than reckless), the arbitrator rewrote the language of Section 13.1.

The Union responds by arguing that the arbitrator's decision that Transdev lacked "just cause" to terminate Wilson's employment aligns with industry standards. [Dkt. No. 38] at 6. The Union cites a 1966 arbitration decision that outlined a seven-factor test for determining whether there was "just cause" to terminate an employee's employment. In re Enterprise Wire Co., 46 LA 359 (Daugherty 1966). That decision explained that arbitrators should consider, among other things, whether the "degree of discipline . . . reasonably related to (a) the seriousness of the employee's proven offense and (b) the record of the employee in his service with the company."[7] [Dkt. No. 38-1] at 11–12. According to the Union, the arbitrator's decision that Transdev lacked just cause to terminate Wilson's employment comports with Enterprise Wire because the arbitrator was permitted to consider the seriousness of the employee's infraction, including whether Wilson acted with wanton disregard for Transdev's safety policies.

The Union's arguments about industry standards are unpersuasive. As an initial matter, it is unclear how Enterprise Wire's seven-factor test supports the Union's position that the

---

[7] Enterprise Wire also encourages arbitrators to consider whether the company gave warnings of potential discipline; whether the rule the employe violated related to safety; whether the company fairly and objectively investigated the employee's misconduct; whether there was substantial evidence to prove that the employee violated company policy; and whether the policies were applied evenhandedly. [Dkt. No. 38-1] at 9–12.

10

arbitrator properly interpreted the phrase "just cause" because <u>Enterprise Wire</u> does not use the terms "recklessness," "gross negligence," or "wanton disregard" in defining "just cause." Moreover, as Transdev correctly explains, there was no evidence of industry practice presented at the arbitration hearing, and the arbitrator did not refer to industry practice in the arbitration award. [Dkt. No. 40] at 7 n.2. Had the arbitrator intended to rely on <u>Enterprise Wire</u>'s multi-factor test or other sources indicating the industry's default definition of "just cause," the arbitrator should have cited or discussed those sources in his written decision. Because the arbitrator failed to do so, the Court is left to assume that the arbitrator's decision is based not on the written provisions of the CBA but rather on his "own brand of industrial justice." <u>Enter. Wheel & Car Corp.</u>, 363 U.S. at 597.

By inserting language into the contract that the parties did not bargain for, the arbitrator modified Sections 13.3(C) and 13.1 of the CBA. "[B]ecause arbitration is a creature of contract, parties have a right to arbitration according to the terms for which it contracted." <u>Advantage Veterans</u>, 70 F.4th at 758 (cleaned up). Had the parties intended to limit termination for instances in which an employee acted recklessly or with wanton disregard for Transdev's safety policies, they would have done so by expressly including that language in the CBA. Accordingly, because the arbitration award "modified unambiguous contract provisions," <u>Choice Hotels Int'l, Inc.</u>, 519 F.3d at 207, the arbitration award must be vacated.

The arbitrator's violation of Section 7.5 of the CBA provides an independent ground for vacating the arbitration award. As Transdev correctly argues, the arbitration award must be vacated because the arbitrator exceeded the authority delegated him under the contract. Section 7.5 of the CBA provides that the arbitrator "shall have no authority to add to, detract from, alter, or otherwise amend in any way any provision of this Agreement." As explained above, Transdev maintains that the arbitrator's recklessness analysis altered Sections 13.3(C) and 13.1

11

of the CBA. According to Transdev, this not only means that the arbitration award failed to draw its essence from the CBA, but it also means that the arbitrator exceeded the authority delegated him under the CBA, which is an independent ground for vacating the award. Although the CBA explicitly prohibits the arbitrator from adding to or altering the terms of the contract, by adding the terms "gross negligence," "wanton disregard," and "reckless" as requirements for finding just cause to terminate an employee, the arbitrator exceeded his authority. [Dkt. No. 22] at 22. Because "an arbitration award is unenforceable if it exceeds the scope" of the arbitrator's authority, Textile Workers Union, 291 F.3d at 897, the arbitrator's violation of Section 7.5 provides an independent basis for vacating the award.[8]

IV.

For the reasons stated in open court and in this Memorandum Opinion, Transdev's Motion for Summary Judgment has been granted, the Union's Motion for Summary Judgment has been denied, and the arbitration award has been vacated.

The Clerk is directed to forward a copy of this Memorandum Opinion to counsel of record.

Entered this 20 day of February, 2026.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge

---

[8] The Court is mindful of the limited scope of review of an arbitration decision; however, there are glaring problems in the arbitrator's actual findings that further support the conclusion that the arbitrator exceeded his authority. Specifically, a key fact that the parties do not dispute in this litigation and did not dispute in the arbitration proceeding is that the pedestrian was in the crosswalk and had the right of way when Wilson's bus struck her. See Joint Stip. ¶ 12. In spite of this clear agreement about a key fact, the arbitrator stated that it was unclear whether the pedestrian was in the crosswalk. Arb. Award at 11. He also made an unsubstantiated statement that "the Grievant did make reasonable efforts to make sure that the crosswalk was clear." Id. at 11–12. Nothing in the transcript of the hearing supports that finding, and Wilson explicitly testified during the arbitration hearing that his attention was focused on the next light a block down the road. Arb. Tr. at 137:15–19.

12